18-340-pr
*Osborn v. Williams, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## AMENDED SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand nineteen.

PRESENT:     JOHN M. WALKER, Jr.,
             DENNY CHIN,
             RICHARD J. SULLIVAN,
                      *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EARL OSBORN,
                      *Plaintiff-Appellant*,

                      v.                                    18-340-pr

Lieutenant CHRISTOPHER WILLIAMS, Correctional
Officer LYNDON STANDARD, Lieutenant RUBEN
BURGOS, Clinical Social Worker JAMES CASTRO,
Lieutenant JASON BEEBE, In their Individual
Capacities,

                      *Defendants-Appellees*.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

_____

[1]     The Clerk of Court is respectfully directed to amend the official caption as set forth above.

FOR PLAINTIFF-APPELLANT:     CHARLES D. COLE, Jr., Newman Myers
                             Kreines Gross Harris, P.C., New York, New
                             York.

FOR DEFENDANTS-APPELLEES:     MATTHEW B. BEIZER, Assistant Attorney
                              General, *for* William Tong, Attorney General,
                              Hartford, Connecticut.

FOR AMICI CURIAE:            Jennifer Wedekind, ACLU National Prison
                             Project, Washington, D.C.; David M. Shapiro,
                             Roderick & Solange MacArthur Justice Center,
                             Chicago, Illinois; Robert Quackenbush *and*
                             Mary Lynne Werlwas, The Legal Aid Society,
                             Prisoners' Rights Project, New York, New
                             York; *and* Dan Barrett, ACLU Foundation of
                             Connecticut, Hartford, Connecticut.

Appeal from the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-appellant Earl Osborn appeals a judgment entered December 29, 2017 dismissing his claims against defendants-appellees Lieutenant Christopher Williams, corrections officer Lyndon Standard, Lieutenant Ruben Burgos, clinical social worker James Castro, and Lieutenant Jason Beebe ("defendants") under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments.  The district court granted summary judgment in favor of defendants on December 29, 2017, dismissing Osborn's

2

claims on the ground that he failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review *de novo* a district court's grant of summary judgment. *See Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018). "[S]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks and citations omitted).

Osborn alleged that he was attacked and injured by his cellmate at MacDougall-Walker Correctional Institution, and that prison officials failed to protect him by not moving him from his cell prior to the attack, even though he had alerted several prison officials that his cellmate had threatened to kill him. The alleged attack occurred on October 13, 2013, but Osborn did not initiate the first of several grievances about the incident until February 17, 2014. Inmates in Connecticut seeking to lodge a complaint relating to an aspect of their confinement under the purview of the Commissioner of the Department of Corrections (the "DOC") must first seek informal resolution and then, if that fails, file a grievance within thirty days of the cause of the grievance. Osborn, who suffers from schizophrenia and experienced a decompensation

3

at the time of the incident, contended that his mental illness rendered him incapable of filing a timely grievance.[2]

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While the PLRA's exhaustion requirement is "mandatory," inmates are exempt from the requirement when administrative remedies are unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when (1) it "operates as a simple dead end"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. Questions of fact with respect to whether an inmate has exhausted or is capable of exhausting administrative remedies are to be decided by the court and not the jury. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (per curiam) (noting that "[m]atters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute"). The DOC's administrative

---

[2] According to the deposition of Deborah Eddinger, a clinical social worker who worked at MacDougall-Walker Correctional Institution, "decompensating means that [the patient is] not able to make decisions on their own. They are actively hearing voices, they're actively suicidal, they're actively -- their mental health diagnosis is not under control, and it needs to -- they need to have either medication to get it back under control, or see a therapist to work with them to try to get it back." App'x at 499.

4

directive governing the inmate grievance process provides that "[s]pecial provisions shall be made to ensure access for the impaired or disabled, illiterate, or those with language barriers." App'x at 53 ¶ 5(B). Further, "[a]ny inmate who needs assistance in using the Inmate Administrative Remedies Process shall receive assistance upon request." App'x at 53 ¶ 5(B)(1).

Whether mental illness can render an administrative remedy unavailable under *Ross* is an open question in this Circuit. Even assuming without deciding, however, that an inmate's mental illness can obviate his obligation to exhaust administrative remedies, we are not persuaded that administrative remedies were unavailable to Osborn here. As a preliminary matter, Osborn does not allege that DOC's administrative process operated as a "dead end" or was opaque, or that administrators kept Osborn from engaging in the process. Indeed, Osborn had been incarcerated within the DOC for over eighteen years by the time of the alleged attack and had availed himself of the grievance process as recently as May 2013, five months prior to the incident.

Further, the record does not contain sufficient evidence to permit a court to find that Osborn was incapable of filing a grievance during the relevant period, which ran from the date of the incident through November 12, 2013. First, Osborn observes that he was placed under the care of the prison psychiatrist starting on November 8, 2013, but provides no evidence that he was unable to file a complaint

5

during the period between the October 13, 2014 incident and November 8, 2013.

Second, Osborn provides no expert testimony to support his contention that his mental illness prevented him from using the grievance process or, at a minimum, from asking for assistance in filing a grievance.[3] Third, the medical records Osborn provided described him as calm and alert. For example, on November 8, 2013, Osborn's medical records indicate that he was "calm, cooperative, oriented, euthymic with full range of affect, denies hearing voices . . . [and] fair impulse control." App'x at 265. On November 10, 2019, the records report that Obsorn said "I'm good," and that he was "alert, calm, exercising, ate, [n]o issues." App'x at 266. Again on November 13, 2019, Osborn's records note that he was "[a]lert, oriented, cooperative without acute symptoms . . . not hallucinating . . . impulse control good." App'x at 267. On this record, a court could not conclude that Osborn was incapable of filing a grievance during the relevant thirty-day period.

As Osborn noted, the record does contain evidence that by December 3, 2013, his mental state had deteriorated, with his medical records noting that he reported hearing voices. Osborn points to this as evidence that his mental condition was such that an administrative remedy was effectively unavailable to him. Given that the episode occurred well outside the relevant thirty-day period, however, a reasonable

---

[3]    The district court concluded that any probative facts about Osborn's mental capacity during the relevant thirty-day period had to be provided through expert testimony. We do not hold that expert testimony is always required, but simply note the absence of any here.

6

jury could not conclude that it rendered Osborn unable to file a grievance prior to November 8, 2013. Finally, Osborn, who was familiar with the grievance process and had filed a grievance in May 2013, never asked for assistance in filing a grievance in response to the October 13, 2013 attack. Had he done so, the Administrative Remedies Process would have required prison officials to assist him in the inmate grievance process. He did not, however, seek assistance.

*   *   *

We have considered all of Osborn's arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk